**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER:** |
| | ) | **4:26-mj-109** |
| **DAVID JUDE REGISTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# DEFENDANT'S MOTION FOR RELEASE ON CONDITIONS AND MEMORANDUM OF LAW

Defendant David Jude Register, by his counsel, moves this Court under 18 U.S.C. § 3142, for Release on Conditions, and shows this Court the following:

## I. Introduction.

The Bail Reform Act favors pretrial release. The government carries the burden of persuasion, and it keeps that burden throughout: a preponderance of the evidence on risk of flight, and clear and convincing evidence on danger to others. The offenses charged against Mr. Register fall outside the predicate offenses listed in § 3142(e)(3), so no presumption of detention attaches, and release on conditions governs by default. The conditions proposed below place Mr. Register under home incarceration with location monitoring, install a third-party custodian, bar all contact with the two officers, strip him of

firearms and internet-capable devices, and commit him to supervised mental-health treatment. Together the combination of these conditions to satisfy Section 3142.

## II. Procedural History.

A criminal complaint issued in this District on October 27, 2026, charging Mr. Register with violations of 18 U.S.C. § 2261A(2) and § 875(c). Compl. 1. An arrest warrant issued the same day, and he was arrested on October 30, 2026. Arrest Warrant Return. Mr. Register is scheduled for a detention hearing before this Court tomorrow.

FBI Special Agent Solomon's affidavit describes text messages that Register allegedly sent to two law-enforcement officers, identified as B.G. and J.C., starting as early as September 2023. Aff. ¶¶ 3, 7. Apparently, many of the messages to B.G. went to a spam folder, where they sat unread until October 2026. Aff. ¶ 7. Some of the language is disturbing, including a message that the recipients "will not survive" and another stating, "Im on my way to kill you right now." Aff. ¶¶ 8, 14. Counsel does not minimize that content.

The affidavit, however, records no overt step toward carrying out any threat. It places Register at neither officer's home, and reports no weapon taken from him. The one in-person episode it recounts, occurred in

approximately 2025, when Register walked up to a police precinct to reach J.C., met officers outside, and left without incident. Aff. ¶ 6.

The affidavit ties the alleged conduct to a mental-health crisis. The messages describe an unstable mind, announce a crisis, reference a psychotic break, and plead for help and for death. Aff. ¶¶ 9, 13, 17. One of the two officers works in the Savannah Police Department's Behavioral Health Unit, and Register's first contact with that officer was an incoherent remark that served no rational purpose. Aff. ¶ 5. These facts point toward treatment that a court can order and supervise.

## III. Argument and Citation of Authority.

### A. The Act favors release and permits detention only in narrow circumstances.

The Bail Reform Act directs release of a defendant on personal recognizance or an unsecured bond, and, where that will not reasonably assure appearance or protect others, to release the defendant on the least restrictive condition or combination of conditions that will reasonably assure appearance and safety. 18 U.S.C. § 3142(b)–(c)(1)(B). The Supreme Court has described pretrial liberty as the norm and detention as the "carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Act favors release under the least restrictive condition compatible with assuring the defendant's

appearance. *United States v. Price*, 773 F.2d 1526, 1528 (11th Cir. 1985) (per curiam).

### B. The government carries the burden of persuasion on both flight and danger.

The government must prove risk of flight by a preponderance of the evidence and a danger to the community by clear and convincing evidence, and the burden of persuasion stays with the government throughout. *United States v. Quartermaine*, 913 F.2d 910, 916-17 (11th Cir. 1990). The Supreme Court set the same clear-and-convincing standard for a finding that no condition will protect the community or any person. *Salerno*, 481 U.S. at 750. The statute requires reasonable assurance, not a guarantee. In *United States v. Runsdorf*, No. 22-8015-WM, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022), the court recognized that every case involves some degree of flight risk, but that the Bail Reform Act nevertheless favors release.

### C. The four statutory factors.

Section 3142(g) directs the Court to consider the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger that release would pose. 18 U.S.C. § 3142(g).

Mr. Register enters this hearing with the full benefit of the Act's preference for release and owes no burden of production, because the charged offenses fall outside of Section 3142(e)(3).

**D. No presumption of detention applies to these charges.**

The rebuttable presumption against release reaches only the offenses that § 3142(e)(3) enumerates: a serious Controlled Substances Act offense, an offense under §§ 924(c), 956(a), or 2332b, a listed terrorism offense, a chapter 77 trafficking offense, and specified offenses against minors. 18 U.S.C. § 3142(e)(3). Cyberstalking under § 2261A and interstate threats under § 875(c) do not appear on that list. The trigger is the offense charged, not the age of a person referenced in the proof, so a threat that happens to mention a child does not convert a § 875(c) or § 2261A(2) charge into an enumerated minor-victim offense. Here, no presumption arises and the burden stays with the government. 18 U.S.C. § 3142(e)(3); *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990).

**1. Nature and circumstances of the offense.**

The conduct alleged in the Affidavit consists almost entirely of text messages. The Affidavit does not allege an act of physical violence against either officer. Aff. ¶¶ 3, 6. The conduct alleged here, troubling though it is,

involved written words and did not advance to any physical confrontation. Those facts weigh in favor of release.

**2. Weight of the evidence.**

A detention hearing does not determine guilt as the Act keeps the presumption of innocence intact. 18 U.S.C. § 3142(j). Two facts in the affidavit bear on the weight of the evidence of dangerousness:

1) many of the early messages to B.G. landed in a spam folder and went unread until October 2026, which cuts against the inference that they instilled the fear that marks a dangerous defendant. Aff. ¶ 7. And,

2) the messages are fairly read as the product of a mental-health crisis rather than a plan. Aff. ¶¶ 9, 13.

The mental health issues cut against detention. In *United States v. Johnson*, 819 F. Supp. 3d 1276, 1279-80 (M.D. Ala. 2026), the court reversed a magistrate judge's detention order after a psychological evaluation revealed a potential insanity defense that had not been before the magistrate. The court reasoned that if the weight of the evidence includes any defenses a defendant might have, the magistrate judge had not had a full picture, and the weight of the evidence factor therefore did not support detention as strongly as initially assessed.

**3. History and characteristics.**

Mr. Register retired from the United States Army as a Lieutenant Colonel in 2015. His last Officer Evaluation Report, submitted as Sealed Exhibit 3, shows that he was both an Executive Officer and Operations Chief for the Operations Support Division stationed in Ft. Knox, Kentucky facilitating Human Resources support for over 16,000 U.S. Army officers. He was noted to be fluent in Kurdish, Turkish, and moderately so in Russian. The comments describe his performance as "phenomenal" and rated him as a top 10% officer. He was noted to be the most trusted Reserve advisor with unlimited potential.

His 2014 Evaluation Comments note that he was handpicked "above 140 other majors and lieutenant colonels to establish this key position within HRC; clearly a top 1% officer." Sealed Exhibit 2, at 2.

And his 2013 Officer Evaluation Report was written while Mr. Register was serving at the Pentagon, Exhibit 1 at 1, and contains the same accolades.

In total, Mr. Register had 24 years, 7 months of service in the U.S. Army. Efforts to locate his DD214 have been unsuccessful in the last few days.

Following his career in the Army, Mr. Register moved to Savannah, where his extensive family was from. He married his spouse in 2017 and owns

his home free of any encumbrance. He has a wide circle of friends and a large family all of whom support him and are concerned about his welfare.

Mr. Register was born on February 18, 1962, and grew up in his early years in Savannah. He had 6 brothers and one sister. Sadly, three of his brothers have passed away, two from brain aneurysms in the same year. During his childhood, his family moved to Virginia, then Smyrna, Georgia, and he eventually graduated from high school in metropolitan Atlanta in 1979. After attending Purdue University for a couple of years, he enlisted in the U.S. Army. While in the Army, he finished his degree at Kennesaw State in 1992 and was commissioned into active-duty service as a 2nd Lt. in December 1992. After a period in the reserves, he was called to active duty after September 11, 2001.

Mr. Register has a talent for languages and became a Military Intelligence Officer attending on several occasions the Defense Language Institute in Monterey, California. Mr. Register spent time in England, Turkey, Ukraine, Iraq and other overseas duty stations. He received an Honorable Discharge and during his service received, among others, the following commendations: The Legion of Merit, Meritorious Service Medals, Commendation Medal (4th award), Army Achievement Medal (3rd award), Army Good Conduct Medal, Army Reserve Components Achievement Medal

(3rd award), National Defense Service Medal (2nd award), the Army Lapel Button (Pentagon), and a Certificate of Appreciation for Service in the Armed Forces of the United States of America, signed by President Barack Obama.

Mr. Register has no criminal record, and, therefore, no history of non-appearance. A defendant with this history is a strong candidate for release: no criminal record, no history of missing court, and settled community ties. *United States v. Stone*, No. 1:24-MJ-0472, 2024 WL 7135837, at *3 (N.D. Ga. June 4, 2024). Mr. Register's mental condition calls for supervised treatment, and it cannot support detention on the strength of speculation, as Part IV explains.

**4. Nature and seriousness of the danger.**

Conditions of release can address the dangerousness the government posits. The proposed conditions set out in below remove the devices on which that the alleged conduct depended, install an around-the-clock location monitoring, and forbid any contact with the two officers.

## III. A combination of conditions will reasonably ensure appearance and safety.

The relevant question is whether conditions can reasonably assure safety and appearance, and here they can. District courts facing comparable allegations have fashioned conditions that answer the government's concerns and leave the defendant at liberty. In *United States v. Dolan*, No. 21-8212-

BER, 2021 WL 2312860, at *1 (S.D. Fla. June 7, 2021), a January 6 case, the court released the defendant on a strict package of conditions: home incarceration, GPS location monitoring, a no-contact order, computer and electronic-device monitoring, no firearms in his possession or home, travel restrictions, surrender of his passport, and a surety bond. Where a court perceives a higher risk, the court may impose additional restrictions that stop short of detention, as the Second Circuit approved in affirming conditions that combined home detention and GPS monitoring with limits on telephones and computers, restrictions on visitors, consent to compliance searches, surrender of travel documents, and close supervision. *United States v. Esposito*, 749 F. App'x 20, 22-23 (2d Cir. 2018) (summary order).

Section 3142(c)(1)(B)(x) authorizes a condition that the defendant undergo medical, psychological, or psychiatric treatment, and courts enforce it by requiring the defendant to provide Pretrial Services the information needed to confirm compliance with the treatment plan. *United States v. Thomas*, 540 F. Supp. 3d 363, 368–70 (W.D.N.Y. 2021); 18 U.S.C. § 3142(c)(1)(B)(x). Reasonable assurance does not demand a guarantee against every risk a court can imagine. A defendant who has surrendered electronic devices that form the basis of the allegations, who surrenders any firearms, who wears a monitor, and who attends court-ordered treatment meets that standard.

## IV. A risk that Mr. Register will harm himself does not justify detention and is met by treatment conditions.

The government may point to messages that suggest suicidal thoughts. The Act keys detention to the safety of persons other than the defendant, so a risk of self-harm cannot by itself justify holding a defendant before trial. *United States v. Storme*, 83 F.4th 1078, 1084 (7th Cir. 2023); accord, *United States v. Wade*, 2026 WL 1141141, at *3 (S.D. Ohio April 28, 2026).

Detention also cannot rest on a guess about mental illness. The Fourth Circuit reversed a detention order in a § 2261A(2) cyberstalking case where the district court relied on unsupported speculation that the defendant had a mental illness he had never been assessed for or diagnosed with, and the government had not met its clear-and-convincing burden. *United States v. Singh*, 860 F. App'x 283, 283–84 (4th Cir. 2021). The answer to Mr. Register's apparent crisis is a court-ordered treatment regime that Pretrial Services supervises under § 3142(c)(1)(B)(x). *Thomas*, 540 F. Supp. 3d at 368; 18 U.S.C. § 3142(c)(1)(B)(x).

## V. Proposed conditions of release.

Mr. Register asks the Court to release him on the following conditions, which Pretrial Services may supplement:

1. Supervision. Mr. Register will submit to supervision by the United States Pretrial Services Office and will report as directed. 18 U.S.C. § 3142(c)(1)(B).

2. Home incarceration and location monitoring. Mr. Register will remain in the approved residence at all times except for court appearances, meetings with counsel, and medical and mental health appointments that Pretrial Services approves in advance, and he will wear a GPS monitor. *Dolan*, 2021 WL 2312860, at *1.

3. No contact. Mr. Register will have no contact, direct or indirect, through any person or by any means, with B.G., J.C., their families, or any potential witness, and he will stay away from their homes and workplaces. 18 U.S.C. § 3142(c)(1)(B)(v).

4. Surrender of firearms. Mr. Register will possess no firearm, destructive device, or other dangerous weapon; any firearm in the residence will be removed, and Pretrial Services will verify the removal. 18 U.S.C. § 3142(c)(1)(B)(viii).

5. Devices and internet. Mr. Register will not possess or use a computer, cellular telephone, or other internet-capable device except for a single device that Pretrial Services approves and monitors, and he will access

no social-media platform or messaging application. *Esposito*, 749 F. App'x at 22.

6. Mental-health evaluation and treatment. Mr. Register will submit to a prompt mental-health and psychiatric evaluation, will follow the treatment and medication his providers and Pretrial Services recommend, and will authorize the disclosure that lets Pretrial Services confirm compliance. 18 U.S.C. § 3142(c)(1)(B)(x); *Thomas*, 540 F. Supp. 3d at 368.

7. Travel and documents. Mr. Register will limit his travel to the Southern District of Georgia, will surrender any passport, and will obtain no new passport or international-travel document while the case is pending. 18 U.S.C. § 3142(c)(1)(B)(iv).

8. Standard conditions. Mr. Register will commit no federal, state, or local crime, will use no controlled substance without a valid prescription, and will comply with the Court's standard conditions. 18 U.S.C. § 3142(b).

9. Placing his residence as collateral. Mr. Register will post his residence, valued at approximately $850,000 and owned without encumbrance as collateral to reasonably assure his appearance and the safety of others and the community.

WHEREFORE, based upon all the reasons and authorities set forth above, Mr. Register respectfully requests that he be released on conditions.

Respectfully submitted, this the 5th day of November, 2026.

***/s/ Thomas A. Withers, Esq.***
Thomas A. Withers, Esq.
Georgia Bar Number: 772250
Attorney for Defendant David J. Register

Withers Law Firm PC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
E-Mail: Twithers@witherslawfirmpc.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER:** |
| | ) | **4:26-mj-109** |
| **DAVID JUDE REGISTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This the 5th day of November, 2026.

***/s/ Thomas A. Withers, Esq.***
Thomas A. Withers, Esq.
Georgia Bar Number: 772250
Attorney for Defendant David J. Register

Withers Law Firm PC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
E-Mail: TWithers@witherslawfirmpc.com